# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

DAVID CAHILL and TRACEY CAHILL,

    Plaintiffs,

vs.

ALTERNATIVE WINES, INC. d/b/a Global Wines Distribution, a North Carolina corporation, and BRUCE A. JONES,

    Defendants.

No. 12-CV-110-LRR

**ORDER**

## TABLE OF CONTENTS

*I.*    *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   *PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *RELEVANT FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*  *SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

    *A.*   *Dismiss or Stay Action Pursuant to the Federal Arbitration Act* . . . . . . *4*
        *1.*   Parties' arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        *2.*   Applicable law . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        *3.*   Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
            *a.*   *Does Iowa law render the arbitration agreements unenforceable?* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
            *b.*   *Do Plaintiffs' claims fall within the arbitration agreements?* . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
    *B.*   *Additional Grounds for Dismissal* . . . . . . . . . . . . . . . . . . . . . . *12*

*VI.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

## I. INTRODUCTION

The matter before the court is Defendants Alternative Wines, Inc. ("Alternative Wines") and Bruce A. Jones's "Motion to Dismiss or Stay Pending Arbitration" ("Motion") (docket no. 10).

## II. PROCEDURAL HISTORY

On September 13, 2012, Plaintiffs David Cahill and Tracey Cahill (collectively, "Plaintiffs") filed a Petition ("Complaint") in the District Court for Linn County, Iowa, Case No. LACV076662. Complaint (docket no. 3). In the Complaint, Plaintiffs allege: (1) breach of contract (Count I); (2) violation of Iowa law governing franchise agreements pursuant to Iowa Code section 537A.10 (Count II); (3) violation of Iowa law governing business opportunity promotions pursuant to Iowa Code chapter 551A (Count III); and (4) fraud (Count IV). Counts I and II are against Alternative Wines, and Counts III and IV are against Alternative Wines and Jones jointly and severally.

On October 26, 2012, Defendants Alternative Wines and Jones (collectively, "Defendants") removed this action on the basis of diversity jurisdiction. Notice of Removal (docket no. 2). On November 30, 2012, Defendants filed the Motion. On January 16, 2013, Plaintiffs filed a Resistance (docket no. 13). On January 28, 2013, Defendants filed a Reply (docket no. 16). Defendants request oral argument on the Motion. The court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

Plaintiffs are citizens of Iowa and reside in Cedar Rapids, Iowa. Alternative Wines is a North Carolina corporation with its principal place of business in Raleigh, North Carolina. Jones is a citizen of North Carolina.

## III. RELEVANT FACTS

This case centers around Defendants' sale of wine distribution rights, certain services and support and other consideration to Plaintiffs. In June 2011, the parties executed a

Purchase Agreement (docket no. 10-3) and a Services Agreement (docket no. 10-4).[1] Plaintiffs claim that Defendants breached both agreements. The Purchase Agreement contains an arbitration provision that states that "[i]f there is a dispute over any provision of this Agreement, the parties agree to submit to binding arbitration." Purchase Agreement ¶ 11.G. The Services Agreement also contains an arbitration provision that states:

> 7. Dispute resolution. Any disputes or claims under this agreement or its breach shall be submitted to and resolved exclusively by arbitration conducted in accordance with American Arbitration Association rules. One arbitrator appointed under such rules shall conduct arbitration. Arbitration shall be in Raleigh, NC. Any decision in arbitration shall be final and binding upon the parties.
>
> The parties hereby agree to all of the above terms and have executed this agreement by a duly authorized officer or officer representative.

Services Agreement ¶ 7.

## IV. SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over this case because complete diversity exists among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . .").

---

[1] The court notes that the Purchase Agreement and Services Agreement provided to the court are unsigned. The Purchase Agreement includes a signature line for David Cahill and Jones, on behalf of Global Wines Distribution. Alternative Wines does business as Global Wines Distribution. The Services Agreement includes a signature line for David Cahill and Alternative Wines.

## V. ANALYSIS

### A. *Dismiss or Stay Action Pursuant to the Federal Arbitration Act*

#### 1. *Parties' arguments*

Defendants argue that the court should enforce the arbitration agreements in the Purchase Agreement and Services Agreement[2] and dismiss or stay the action pending arbitration. Defendants contend that the Federal Arbitration Act ("FAA") governs the dispute and preempts Iowa Code section 537A.10(3)(a).

Plaintiffs argue that the arbitration agreements are unenforceable under Iowa Code section 537A.10(3)(a) and contend that the FAA does not preempt section 537A.10(3)(a) because the FAA only preempts state laws that burden arbitration agreements specifically. According to Plaintiffs, because section 537A.10(3)(a) applies to all franchise agreements, including but not limited to arbitration agreements, the FAA does not preempt it. Therefore, Plaintiffs argue that the arbitration agreements at issue in this matter are unenforceable.

#### 2. *Applicable law*

The FAA states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the FAA applies to any arbitration clause in a contract involving interstate commerce. *Id.*; *Perry v. Thomas*, 482 U.S. 483, 489 (1987). "[T]he purpose behind [the FAA] was to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter*

---

[2] The court notes that only the arbitration provision in the Services Agreement contains a choice of forum provision requiring arbitration in Raleigh, North Carolina and, therefore, Iowa Code section 537A.10(3)(a) does not impact the arbitration provision in the Purchase Agreement. Nevertheless, the court will consider the arbitration provisions together.

4

*Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985) (discussing the legislative history of the FAA). There is a national policy in favor of arbitration that "'foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements.'" *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (alteration in original) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218.

When reviewing an arbitration clause, the Eighth Circuit Court of Appeals has held that a court must consider: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). "Whether an arbitration agreement is valid is a matter of state contract law." *Id.* "[S]tate law may be applied '*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (quoting *Perry*, 482 U.S. at 492 n.9). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Id.* at 687. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself . . . or a . . . defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Southland Corp.*, 465 U.S. at 16.

"A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d

1193, 1198 (8th Cir. 2008). In determining whether a dispute comes within the scope of an arbitration agreement, the court "does not reach the potential merits of any claim but construes the clause liberally, resolving any doubts in favor of arbitration and granting the motion 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at 1199 (quoting *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974-75 (8th Cir. 2005)). When the parties have entered into a broad arbitration agreement, a district court must send a claim to arbitration when the claim "touch[es] matters covered by" the arbitration agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985).

A party that is not a signatory to an arbitration agreement may also enforce the agreement against signatory parties under certain circumstances. First, a nonsignatory can enforce an arbitration agreement "when 'the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.'" *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). Second, a nonsignatory can enforce an arbitration agreement "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory." *Id.* (alteration in original) (quoting *MS Dealer Serv. Corp.*, 177 F.3d at 947) (internal quotation marks omitted).

The Iowa Code provision governing franchise agreements states that "[a] provision in a franchise agreement restricting jurisdiction to a forum outside this state is void with respect to a claim otherwise enforceable under this section." Iowa Code § 537A.10(3)(a). The Supremacy Clause of the United States Constitution provides that federal law enacted pursuant to the United States Constitution is the supreme law of the land and preempts state law that either conflicts directly or by implication. United States Const. art. VI, cl. 2.

Pursuant to the Supremacy Clause, the FAA preempts conflicting state laws. *See Doctor's Assocs., Inc.*, 517 U.S. at 688 (holding that the FAA preempts a Montana statute that requires notice in order to enforce an arbitration clause); *Perry*, 482 U.S. at 484, 490-91 (holding that the FAA preempts a California law that "provides that actions for the collection of wages may be maintained 'without regard to the existence of any private agreement to arbitrate'" (quoting Cal. Lab. Code Ann. § 229)); *Southland Corp.*, 465 U.S. at 10, 16 (holding that the FAA preempts California law that requires "judicial consideration of claims brought under the [California Franchise Investment Law]"); *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 447 (5th Cir. 2001) (holding that the FAA preempts a Louisiana statute that "directly conflicts with § 2 of the FAA because the Louisiana statute conditions the enforceability of arbitration agreements on selection of a Louisiana forum"); *Collins Radio Co. v. Ex-Cell-O Corp.*, 467 F.2d 995, 998 (8th Cir. 1972) ("The plain meaning of § 2 is that federal courts are no longer to apply state statutes and decisions which limit arbitration agreements with rules not applicable to other contracts.").

### 3. *Application*

The court will apply the two-step inquiry discussed above to determine whether the arbitration agreement is enforceable. The court assumes without deciding that the arbitration agreements are provisions of valid contracts. First, the court will consider whether the arbitration agreements are valid. *See Faber*, 367 F.3d at 1052. Second, the court will consider whether the claims asserted in the Complaint fall within the terms of the arbitration agreements. *See id.*

#### a. *Does Iowa law render the arbitration agreements unenforceable?*

The court notes that courts considering similar circumstances have found arbitration agreements to be valid and enforceable. In *KKW Enterprises Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42 (1st Cir. 1999), the First Circuit Court of Appeals

7

considered whether the FAA preempts "the Rhode Island Franchise Investment Act, which renders unenforceable '[a] provision in a franchise agreement restricting jurisdiction or venue to a forum outside [Rhode Island] . . . with respect to a claim otherwise enforceable under this Act.'" *Id.* at 49 (alterations in original) (quoting R.I. Gen. Laws § 19-28.1-14). The First Circuit held that § 2 of the FAA preempts the Rhode Island statute and reversed the district court's decision refusing to enforce an arbitration agreement that provided a forum outside of Rhode Island. *Id.* at 50. The First Circuit found that the Rhode Island statute was not a generally applicable contract defense because it applied only to "one type of provision, venue clauses, in one type of agreement, franchise agreements," and therefore, the "the statute does not apply to *any* contract." *Id.* at 51. Thus, the First Circuit held that, "if applied to arbitration agreements, [the Rhode Island statute is] preempted by § 2 of the FAA." *Id.*

Similarly, in *M.A. Mortenson/The Meyne Co. v. Edward E. Gillen Co.*, No. Civ. 03-5135 PAM/RLE, 2003 WL 23024511 (D. Minn. Dec. 17, 2003), the United States District Court for the District of Minnesota held that the FAA preempts an Illinois statute, which states that "[a] provision contained in . . . a building and construction contract to be performed in Illinois . . . that requires any litigation, arbitration, or dispute resolution to take place in another state . . . is void and unenforceable." *Id.* at *3 (quoting 815 Ill. Comp. Stat. 665/10). The district court found that, because the Illinois statute "prohibits a party from even presenting an arbitration agreement suggesting a non-Illinois forum," it "runs afoul to the FAA's broad policy of allowing for the enforceability of arbitration disputes agreed to by the parties." *Id.* at *4. Thus, the district court held that the arbitration provision was valid and enforceable. *Id.*

Plaintiffs rely on the Montana Supreme Court's holding in *Keystone, Inc. v. Triad Systems Corp.*, 971 P.2d 1240 (Mont. 1998) in support of their argument. The court finds that the facts in *Keystone, Inc.* are distinguishable from those in the underlying matter. In

8

*Keystone, Inc.*, the court considered whether a Montana statute invalidated an arbitration clause that provided for arbitration in California. *Id*. The Montana statute states that "[e]very stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract by the usual proceedings in the ordinary tribunals . . . is void." *Id*. at 1243 (quoting Mont. Code Ann. § 28-2-708). Similarly, Montana Code section 27-5-323 invalidates choice of forum provisions in arbitration agreements. *Id*. at 1244. The Montana Supreme Court held that, because Montana law "does not distinguish between forum selection clauses which are part of contracts generally and forum selection clauses found in agreements to arbitrate," the statute does not conflict with the FAA and, thus, the FAA does not preempt it. *Id*. at 1245.

The statute at issue in the underlying matter does not apply to contracts generally. Rather, it applies specifically to franchise agreements. Thus, the facts here are more comparable to those in *KKW Enterprises*, where the court found that a state statute that only applies to franchise agreements "is not a generally applicable contract defense," *KKW Enters.*, 184 F.3d at 51, than *Keystone, Inc.*, where the court found that the state statute "does not distinguish between forum selection clauses which are part of contracts generally and forum selection clauses found in agreements to arbitrate," *Keystone, Inc.*, 971 P.2d at 1245.

The court finds that Iowa Code section 537A.10(3)(a) is not a generally applicable contract defense comparable to fraud, duress or unconscionability. *See Doctor's Assocs., Inc.*, 517 U.S. at 687. Rather, section 537A.10(3)(a) applies only to franchise agreements and, therefore, violates the Supremacy Clause because it directly conflicts with § 2 the FAA. *See Southland Corp.*, 465 U.S. at 10 (finding that the California Supreme Court's interpretation of California law "directly conflicts with § 2 of the [FAA] and violates the Supremacy Clause"); *KKW Enters.*, 184 F.3d at 51 (holding that the FAA preempted a similar statute); *M.A. Mortenson/The Meyne Co.*, 2003 WL 23024511, at *4 (same).

### b. *Do Plaintiffs' claims fall within the arbitration agreements?*

The court finds that each of the claims against Alternative Wines falls within the scope of the arbitration agreements. The arbitration provision in the Services Agreement states that it applies to "[a]ny disputes or claims under this agreement or its breach." Services Agreement ¶ 7. The arbitration provision in the Purchase Agreement states that it applies to "a dispute over any provision of this Agreement." Purchase Agreement ¶ 11.G. The Purchase Agreement and Services Agreement are contracts between David Cahill and Alternative Wines. Each of the claims that Plaintiffs allege in the Complaint—breach of contract, violation of the Iowa Code provision governing franchise agreements, violation of the Iowa Code provision governing business opportunity promotions and fraud—directly implicates the Services Agreement and Purchase Agreement and, thus, clearly falls within the scope of the arbitration agreements. *See* Complaint ¶¶ 9-31; *see also CD Partners, LLC*, 424 F.3d at 800 ("Broadly worded arbitration clauses . . . are generally construed to cover tort suits arising from the same set of operative facts covered by a contract between the parties to the agreement.").

Further, the court finds that the claims raised in Counts III and IV against Jones fall within the scope of the arbitration agreements. As discussed above, a nonsignatory can enforce an arbitration agreement if either: (1) the relationship between the signatory and nonsignatory defendants is a close one; or (2) the plaintiffs' claims against the nonsignatory rely on and presume the existence of the arbitration agreement. *CD Partners, LLC*, 424 F.3d at 799. The court finds that both circumstances are present here. The relationship between Jones, the nonsignatory, and Alternative Wines, the signatory, is close. Jones is the President and CEO of Alternative Wines and Plaintiffs' claims against Jones stem from his actions in his capacity as an officer of Alternative Wines. Additionally, the claims rely on the Purchase Agreement and Services Agreement, the very contracts that contain the arbitration clauses. Therefore, the court finds that each claim against Alternative Wines

and Jones falls within the arbitration agreement and "touch[es] matters covered by the" arbitration clause, making them subject to arbitration. *Mitsubishi Motors Corp.*, 473 U.S. at 625 n.13.

The court finds that the parties have entered into binding arbitration and, therefore, it is appropriate to dismiss this action.[3] Although the FAA provides that a court should stay an action pending arbitration, *see* 9 U.S.C. § 3, several courts have held that dismissal is appropriate when all of the issues raised in the action must be submitted to arbitration in accordance with a valid and enforceable arbitration agreement. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (stating that § 3 of the FAA "was not intended to limit dismissal of a case in the proper circumstances" and "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration"); *Rothman Furniture Stores, Inc. v. Everest Software, Inc.*, No. 4:10-CV-848 CDP, 2010 WL 4319707, at *2 (E.D. Mo. Oct. 22, 2010) ("[W]here all of the issues raised in the [c]omplaint must be submitted to arbitration in accordance with a valid and enforceable arbitration agreement, most courts agree that dismissal of the case, rather than imposing a stay, is appropriate."); *Kalinski v. Robert W. Baird & Co.*, 184 F. Supp. 2d 944, 946 (D. Neb. 2002) ("Because all of the plaintiff's claims are subject to arbitration, I have the discretion to dismiss this matter rather than to stay it and compel arbitration.").

---

[3] Plaintiffs argue that, even if the court enforces the arbitration agreements, it should order arbitration in Iowa. However, because the court finds that the arbitration agreements are enforceable, this matter is not properly before this court and, therefore, the court finds that it need not address it.

### B. *Additional Grounds for Dismissal*

Defendants also argue that the court should dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and that the court should dismiss the fraud claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Because the court shall dismiss the action due to the parties' arbitration agreements, the court finds it unnecessary to address these alternate grounds for dismissal.

### VI. CONCLUSION

In light of the foregoing, Defendants' "Motion to Dismiss or Stay Pending Arbitration" (docket no. 10) is **GRANTED**. The Clerk of Court is **DIRECTED** to **DISMISS THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 4th day of February, 2013.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA